## A02A2229. SOUTH v. BANK OF AMERICA.
(579 SE2d 80)

ADAMS, Judge.

In the second appearance of this case in this Court,[1] Harry South appeals a superior court order granting summary judgment to Bank of America on his claims arising out of a certificate of deposit, issued in both his and his mother's names. South claims there are issues of fact about whether his mother ever negotiated the certificate and placed the proceeds in her name only, and whether the bank is protected from liability even though the transaction was not documented according to bank policies. Because South has failed to rebut the bank's direct evidence showing that the certificate was negotiated on a proper request from his mother, we affirm summary judgment.

The basic facts are set out in our earlier opinion.

On April 21, 1993, South's mother, Louise South, purchased an 18-month certificate of deposit ("CD") from NationsBank for $40,000. She placed the CD in her and South's names. However, she did not inform South of the purchase. On October 29, 1994, pursuant to a telephone request by Louise South, the bank redeemed the CD for its matured value,

---

added those funds to other funds belonging to her, and opened a second CD in her name only. After Louise South's death in 199[8], South learned of these transactions and filed suit against Bank of America, the successor to Nations-Bank. South asserted that by negotiating the original CD without his knowledge or consent, the bank violated his ownership rights, converted the proceeds of the CD, and breached its contract. South also sought equitable reformation of the CD, attorney fees and expenses of litigation, and punitive damages.

*South v. Bank of America*, 250 Ga. App. 747-748 (551 SE2d 55) (2001).[2]

The earlier appeal involved Bank of America's motion for judgment on the pleadings, in which it contended that it was protected from liability by OCGA § 7-1-816, which, together with OCGA § 7-1-820, protects banks from liability when they issue payments on a multiple-party account based on a request from less than all of the parties to the account. *South*, 250 Ga. App. at 748.[3] This Court reversed the trial court's grant of the bank's motion on these grounds because it found that there was an issue of fact as to whether the funds were paid to one of the parties of the multi-party account *"on a proper request,"* as defined by OCGA § 7-1-810 (12). (Emphasis in original.) *South*, 250 Ga. App. at 749 (1). This Court concluded,

> The record contains no information regarding the conditions of the account or the regulations of the bank. In the absence of such information, it cannot be determined whether the funds were disbursed pursuant to a proper request and thus whether OCGA § 7-1-816 is applicable.

Id. at 750 (1).

Following the earlier appeal, the parties submitted additional evidence, and the bank moved for summary judgment on the grounds that the undisputed evidence showed that South's mother made a proper request to negotiate the certificate. The trial court agreed and granted summary judgment.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review the evidence de novo and view

---

[2] The date of Louise South's death was erroneously stated as 1999 in the earlier opinion. *South*, 250 Ga. App. at 748.

[3] A CD is an account within the meaning of OCGA § 7-1-816. Id. at 748; OCGA § 7-1-810 (1).

the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

1. South first contends that the trial court erred by finding that there were no issues of material fact regarding whether his mother actually made the telephone request. Although South concedes that Sally Connelly, a bank official, testified that she took the telephone call from South's mother and executed the transaction in accordance with her wishes, he contends that "none of the necessary documentation that would ordinarily support [the bank's] claims seems to exist." South concludes that the lack of this documentation raises an issue of fact as to whether his mother actually made the request to negotiate the CD.

The bank relies on the following evidence. Connelly testified that Ms. South called her on October 26, 1994, and directed her to redeem two CDs, including the one at issue here, to place part of the proceeds in a new $100,000 CD, and to place the remainder in her checking account. After the call, Connelly filled out and signed two CD/IRA Withdrawal/Redemption slips, one for each CD. She also filled out and signed a CD/IRA New Account Deposit slip memorializing the request to open a new CD in Ms. South's name only. She filled out and signed a fourth slip verifying Ms. South's request to transfer the remainder into her checking account. Connelly gave the slips to the bank's teller to complete the transactions. A copy of the fourth slip was mailed to Ms. South. Copies of each of these four slips are in evidence.

Connelly then sent Ms. South two CD Withdrawal Confirmation forms and one CD Deposit Receipt for the new CD. Copies of these forms are also in evidence. Counsel for the bank asserts that each of the four items mailed to Ms. South in 1994 was produced by Harry South in discovery. Finally, between October 26, 1994, and the time of Ms. South's death in 1998, Connelly performed additional transactions for Ms. South over the telephone.

Connelly also testified that, at the time of the transaction, the bank's consumer banking representatives had the authority, at their discretion, to complete customer banking transactions, including the creation and redemption of certificates of deposit, pursuant to telephone requests if the representative knew the customer and both parties were comfortable with the bank handling transactions over the phone. Even South's witness on bank policy, Robert Sisson, a former vice president of the bank, testified that bank policy allowed telephone transactions:

> If the bank customer was well known to the individual who handled the transaction, and the in-person appearance with

> the customer would cause some hardship to the customer, the bank employee was allowed at their discretion to create a new CD account over the telephone pursuant to a customer's telephone request.

Connelly testified that Ms. South was just such a customer.

South complains that the bank failed to produce (1) any written policies and procedures relevant to the transaction; (2) a depositor's agreement for the new CD account; or (3) any document signed by Ms. South authorizing the redemption of the $40,000 certificate. In fact, Connelly admitted that she did not know what the bank's written policies and procedures stated at the time. Second, Sisson testified that a new depositor agreement was required for the new CD, whereas none was provided by the bank for this transaction. Third, Sisson testified that even when a telephone transaction was authorized, the procedure required some written verification of the transaction: at least one account holder had to sign the withdrawal confirmation, or the employee who handled the transaction had to sign a document that showed that he or she handled the transaction pursuant to a telephone request from the customer. Connelly disagreed that either of these documents was required by the bank at the time.

South contends that the lack of these three items is direct evidence that his mother did not authorize redemption of the certificate at issue, thereby creating an issue of fact in light of the bank's evidence. He also points out that the bank gave a different date for the telephone call in correspondence to him, and he contends this raises an issue of fact. He also provided testimony that his mother "would never conduct bank transactions over the phone." Finally, South implies that his sister, who received his mother's mail and paid her bills, may have made the call and taken the proceeds. We disagree that any of these items creates an issue of fact regarding whether Ms. South made the telephone call.

"In ruling on a motion for summary judgment, a finding of fact that may be inferred from, but is not demanded by, circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists, provided that the circumstantial evidence may be construed consistently with the direct evidence." (Citation and punctuation omitted.) *Lane v. Spragg*, 224 Ga. App. 606, 607-608 (481 SE2d 592) (1997). Here, the bank produced uncontradicted evidence, in the form of Connelly's testimony, that Ms. South authorized the transaction, and both parties agree that telephone transactions were authorized at the time. South, at best, produced only circumstantial evidence. Even if bank policy required a new depositor agreement for the new CD and some additional written verification of the transaction, the lack of these items merely

shows that the bank did not follow its own procedure. That is not direct evidence, as South claims, that his mother did not make the telephone call. Nor is it inconsistent with the direct evidence that she did make the call. Compare *Northside Equities v. Hulsey*, 275 Ga. 364-365 (567 SE2d 4) (2002).

The other evidence cited by South is also circumstantial. The discrepancy about the date of the telephone call is not direct evidence that Ms. South did not make the call. Evidence that Ms. South did not have a practice of making telephone transactions is also circumstantial evidence. See *Fletcher Emerson Mgmt. Co. v. Davis*, 134 Ga. App. 699, 701 (2) (215 SE2d 725) (1975). Finally, South has not presented any evidence that his sister was involved in the telephone call.

In short, South has failed to present evidence that raises a material issue of fact about whether his mother made the telephone request.

2. South contends that even if his mother authorized the transaction, the trial court erred by concluding that the bank was protected from liability by OCGA §§ 7-1-816 and 7-1-820. South contends that there is an issue of fact regarding whether his mother made a *proper* request for payment under those Code sections because, contrary to bank policy as described by Sisson, Connelly admitted that she did not obtain a withdrawal confirmation signed by his mother nor personally sign a document that showed that she handled the transaction pursuant to Ms. South's telephone request.

A "request" is defined as "a proper request for withdrawal or a check or order for payment which complies with all conditions of the account, *including special requirements concerning necessary signatures and regulations of the financial institution. . . .*" (Emphasis supplied.) OCGA § 7-1-810 (12). South, however, confuses a request for payment with the bank's need to document the request for payment after the fact. The procedural requirements that South contends are lacking pertain to the steps *that follow* a request by the customer for payment: they are steps required by the bank to document that they received the request for payment from one of the parties to the account.

With regard to the request for payment itself, Sisson testified (and Connelly agreed) that the bank could take a customer's telephone request for payment "[i]f the bank customer was well known to the individual who handled the transaction, and the in-person appearance with the customer would cause some hardship to the customer." Connelly established these facts in her uncontradicted testimony. Sisson described another limitation regarding telephone requests but that limitation is not applicable. He testified that telephone requests "could only be used for the creation of a new account

and could not be used if the accounts were combined and the old account number retained." Here, a new account was created, and there is no evidence that the old account number was retained.

Because the only evidence is that Ms. South's telephone request for redemption of the $40,000 CD was made in accordance with all conditions of the account and regulations of the bank, the bank is protected from liability by OCGA §§ 7-1-816 and 7-1-820. Accordingly, the trial court properly granted summary judgment.

3. South's argument that former OCGA § 11-3-116 (b) is applicable to this case has already been resolved against him in the earlier opinion of this case. *South*, 250 Ga. App. at 748-749.

*Judgment affirmed. Barnes, J., concurs. Ruffin, P. J., concurs in judgment only.*

DECIDED MARCH 6, 2003 —

*Duffy & Feemster, Matthew M. Bush*, for appellant.
*Inglesby, Falligant, Horne, Courington & Chisholm, Kathleen Horne, Owen C. Murphy*, for appellee.