**THIRD DIVISION
BARNES, P. J.,
BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A2021. BROWN et al. v. GEORGIACARRY.ORG, INC. et al.

BOGGS, Judge.

We granted this interlocutory appeal to consider the trial court's denial of summary judgment on the issue of qualified immunity for government officials under 42 USC § 1983.[1] Michael Justin Belt was arrested outside the Colonial Mall in Brunswick, Georgia in December 2008, on a charge of misdemeanor obstruction of a police officer, OCGA § 16-10-24 (a). The charge against him ultimately was

---

[1] The trial court noted in its certificate of immediate review, "The Court is aware that there is some authority which suggests that a denial of the defense of qualified immunity is directly appealable . . . while older authority suggests a certificate of immediate review is required." But see *Turner v. Giles*, 264 Ga. 812, 813-814 (1) (450 SE2d 421) (1994), dismissing appellants' direct appeal and holding that a pretrial order denying qualified immunity to government officials in an action under 42 USC § 1983 must be appealed through the interlocutory appeal provisions of our Code. But we need not address that issue, because appellants availed themselves of the interlocutory appeal procedures.

dismissed in 2012, after jury selection was completed. Belt and GeorgiaCarry.Org, Inc.[2] [collectively "appellees"] then brought this action against the arresting officers, seeking damages and declaratory relief. The officers moved for summary judgment, which the trial court granted as to all of appellees' claims except the claim for malicious prosecution under § 1983, finding that genuine issues of material fact remained on the issue of qualified immunity. Because the evidence presented meets the minimal requirement of "arguable reasonable suspicion" in the context of qualified immunity in a § 1983 action, the trial court erred in denying the officers' motion for summary judgment. We therefore reverse.

"On appeal from the denial of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010); see OCGA § 9-11-56 (c). So viewed, the record shows that on December 14, 2008, Belt went to the Colonial Mall in Glynn County, Georgia, while openly wearing a handgun

---

[2]GeorgiaCarry.Org is a Georgia corporation "whose mission is to foster the rights of its members to keep and bear arms." Belt is a member of GeorgiaCarry.Org.

2

in a waistband holster. Before Belt reached the mall entrance, a security guard approached him, informed him that the mall had a "no-weapons policy," and asked him to return his handgun to his vehicle, and Belt agreed and began walking to his truck. The security guard also informed Belt that there had been a shoplifting incident at the mall and that he should return his handgun to his vehicle for that reason as well. Belt testified that he was not informed that he was a suspect in the shoplifting.

As Belt returned to his truck in the mall parking lot, a second security guard and off-duty police lieutenant for the City of Brunswick, David O'Neal, approached him and demanded to see his firearms license.[3] When Belt refused, Lieutenant O'Neal stood behind Belt's truck, told him not to leave, and called the police. Lieutenant O'Neal then contacted the police and reported that there was an armed subject at the mall and that he needed assistance.

Officer Henry Scott of the Glynn County Police Department answered the dispatch call of "a subject who was armed with a handgun." He testified that Lieutenant O'Neal informed him that mall security "had received some complaints

---

[3]Lieutenant O'Neal was originally a defendant in this action, but died during the litigation. His estate was not substituted as a defendant after a suggestion of death was filed, and he was dismissed as a party with appellees' consent. See OCGA § 9-11-25 (a).

3

about Mr. Belt having a gun inside the mall and that he had been identified as a suspect in a shoplifting incident at the . . . music store inside the mall." Officer Scott made contact with Belt and began speaking with him. Belt told Officer Scott his name and said that he had a firearms license, but he refused to produce it, saying, "No, I don't have to show it to you."

Shortly thereafter, Sergeant Craig Brown of the Glynn County Police Department also arrived on the scene. Sergeant Brown had heard the police dispatch that there was "a man with a gun" at the mall and that mall security had called the police. When he arrived, Sergeant Brown spoke with Officer Scott, who told him that Belt "was trying to take a gun into the mall" and that "he was a shoplifting suspect." Sergeant Brown asked Belt for his firearms license and his driver's license, but Belt refused to produce them. Based upon this refusal, Sergeant Brown arrested Belt for misdemeanor obstruction.

"To establish a federal malicious prosecution claim under [42 USC] § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." (Citations, footnote, and emphasis omitted.) *Wood v. Kesler*, 323 F3d 872, 881 (III) (C) (11th Cir. 2003). The common law elements of a malicious

4

prosecution claim under Georgia law are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." (Citations and footnote omitted.) Id. at 882 (III) (C); see also *Gooch v. Tudor*, 296 Ga. App. 414, 416 (1) (674 SE2d 331) (2009).

But "malicious prosecution suits are not favored. It is public policy to encourage citizens to bring to justice those who are apparently guilty." (Citation, punctuation and footnote omitted.) *Gibbs v. Loomis, Fargo, & Co.*, 259 Ga. App. 170, 176 (576 SE2d 589) (2003). And in the context of a § 1983 claim,

> qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.

(Citations and punctuation omitted.) *Wood*, supra, 323 F3d at 877 (III) (A).

Accordingly, we first must consider the provisions of OCGA § 16-10-24 (a). That Code section provides that "a person who knowingly and willfully obstructs or

5

hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." In order to show misdemeanor obstruction, "the act constituting obstruction or hindering must be knowing and wilful, and . . . the officer must be lawfully discharging his official duties at the time of such act. [Cit.]" *Weidmann v. State*, 222 Ga. App. 796, 797 (2) (476 SE2d 18) (1996) (full concurrence in Division 2). "The statute was made purposefully broad to cover actions which might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties." (Citations, punctuation, and footnote omitted.) *Berrian v. State*, 270 Ga. App. 582 (608 SE2d 540) (2004).

A knowing and willful refusal to provide identification to an officer acting in the lawful discharge of his official duties may constitute obstruction under OCGA § 16-10-24 (a). See *Hall v. State*, 201 Ga. App. 328, 328-329 (1) (411 SE2d 274) (1991); *Bailey v. State*, 190 Ga. App. 683, 684 (379 SE2d 816) (1989). Relying upon *Kolender v. Lawson*, 461 U. S. 352, 357-361 (III) (103 SCt 1855, 75 LE2d 903) (1983), appellees argue that law enforcement cannot sanction individuals for refusing to produce documentation verifying their identify, such as a driver's license, during an investigatory stop. But in that case, the United States Supreme Court held a

6

loitering statute void for vagueness, id. at 361 (IV), and expressly did not reach any Fourth Amendment issues. Id., n.10.[4]

We next consider whether officers were entitled to ask Belt for identification. In the course of a "second-tier encounter" under *Terry v. Ohio*, 392 U. S. 1, 21-22 (III) (88 SCt 1868, 20 LE2d 889) (1968), if an officer has a reasonable, articulable suspicion of criminal conduct, he may lawfully detain an individual for a brief time and request identification as part of the investigatory stop. *State v. Beasley*, 270 Ga. App. 638, 639 (607 SE2d 245) (2004). And in the context of § 1983 qualified

_____

[4]Appellees also cite a dictum in *United States v. Brown*, 731 F2d 1491, 1494 (II) (11th Cir.), vacated in part on other grounds, 743 F2d 1505 (11th Cir. 1984), to the effect that the defendants in that case were entitled to refuse to furnish identification in the course of a *Terry* stop. But *Brown* does not interpret OCGA § 16-10-24 (a), as appellees contend, but rather Ga. Code Ann. § 26-2506, the predecessor to OCGA § 16-10-25, which forbids giving a false name or other false information to a law enforcement officer. 731 F2d at 1494 (II) n. 2. And *Brown* was a criminal prosecution that did not apply the standard of "arguable reasonable suspicion" in the context of qualified immunity from a malicious prosecution claim. As the district court observed in *Gainor v. Douglas County*, 59 FSupp2d 1259, 1282 (D) (2) (a) (N.D. Ga. 1998), this dictum stands virtually alone and was not detected by the Tenth Circuit in a survey of qualified immunity cases dealing with the issue, and "it seems unfair to attribute this knowledge to a deputy [officer]. . . who likely does not enjoy the same legal skills as do Tenth Circuit judges." 59 FSupp2d at 1284 (III) (2) (b). Moreover, "[a]s *Brown* did not deal with Georgia's obstruction statute, it arguably did not draw a bright line in circumstances so factually similar to those at hand that all reasonable officers in [the arresting officer's] place would have believed the actions he took were unconstitutional and, thus, its existence does not defeat the defense of qualified immunity." Id.

7

immunity, "under Georgia case law dealing with the offense of obstruction, the standard for determining whether an officer was lawfully discharging his duties such that a refusal to provide identification would constitute obstruction is whether a reasonable suspicion existed to stop the individual charged with obstruction." *Gainor v. Douglas County*, 59 FSupp2d 1259, 1282 (III) (D) (2) (a) (N.D. Ga. 1998).

In an action for malicious prosecution under § 1983,

[a] law enforcement official who reasonably *but mistakenly* concludes that reasonable suspicion is present is still entitled to qualified immunity. When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had "arguable" reasonable suspicion to support an investigatory stop.

(Citations omitted; emphasis supplied.) *Jackson v. Sauls*, 206 F3d 1156, 1165-1166 (V) (11th Cir. 2000). Therefore, if officers had "arguable reasonable suspicion" to detain Belt and request identification, they were acting in the lawful discharge of their duties when they arrested him for refusing to provide identification, and they are entitled to qualified immunity. Id.

Under the facts presented to the trial court here, this issue is resolved by the well-established rule governing circumstantial and direct evidence:

8

> In ruling on a motion for summary judgment, a finding of fact that may be inferred from, but is not demanded by, circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists, provided that the circumstantial evidence may be construed consistently with the direct evidence.

(Citations, punctuation, and footnote omitted.) *White v. Shamrock Bldg. Systems*, 294 Ga. App. 340, 344 (1) (669 SE2d 168) (2008).

Here, appellees offer circumstantial evidence to support their contention that the officers were harassing Belt for carrying a firearm rather than conducting an investigatory stop based upon reasonable suspicion. They point out that the actions of the first security guard, who simply asked Belt to put his gun back in his vehicle, were inconsistent with a belief that he was a criminal suspect. They also note that neither Officer Scott nor Sergeant Brown had any independent knowledge of any shoplifting incident or any other information connecting that incident with Belt other than what they were told by Lieutenant O'Neal, and that apparently no separate police report of the shoplifting incident exists. They further note that at least one officer admitted that he "didn't investigate the shoplifting" and that Belt was not told that he was a shoplifting suspect until after he was arrested, and then only "kind of. Not

9

really."[5] Finally, they point out that officers repeatedly asked Belt only for his "gun license," and that only after Sergeant Brown arrived on the scene and first asked Belt for his "gun license," was he asked for his "driver's license or ID." From this circumstantial evidence, appellees argue that "[t]he shoplifting 'investigation' was nonexistent" and "a sham to justify Appellants' wrongful prosecution of Belt."

But Officer Scott presented positive and uncontradicted evidence that he was told by Lieutenant O'Neal both that mall security had received complaints about Belt carrying a gun inside the mall and that Belt was a suspect in a shoplifting incident in the mall. Direct evidence that the officers were informed that Belt was a suspect directly contradicts appellees' contention, based on circumstantial evidence, that the investigation was a "sham" and a pretext for officers to harass him for carrying a firearm. See *Young v. Eslinger*, 244 Fed. Appx. 278, 280 (11th Cir. 2007) (report from another officer that vehicle was involved in drug transaction with subject of ongoing investigation was "arguable reasonable suspicion" to stop vehicle.)

---

[5]Appellees argue from *Ewumi v. State*, 315 Ga. App. 656 (1) (727 SE2d 257) (2012), that Belt cannot be guilty of obstructing an investigation of which he was ignorant. But *Ewumi* is not persuasive here. That appeal was from the denial of a motion to suppress in a criminal prosecution, not a claim of qualified immunity in a § 1983 action. Moreover, it involved a first- not a second-tier encounter.

10

And the circumstantial evidence offered by appellees can be construed consistently with Officer Scott's testimony. Even if Belt in fact had not entered the mall with a firearm and was not a suspect in a shoplifting incident, and even if Lieutenant O'Neal was mistaken or untruthful in giving Officer Scott that information, the circumstantial evidence is not inconsistent with Officer Scott's direct evidence that he was *so informed* by Lieutenant O'Neal. It therefore is insufficient to create an issue of fact. *Mucyo v. Publix Super Markets*, 301 Ga. App. 599, 601 (2) (688 SE2d 372) (2009) (circumstantial evidence that plaintiff did not see employee before she fell not inconsistent with employee's positive, uncontradicted testimony that she inspected the area within two minutes before plaintiff's fall). See also *South v. Bank of America*, 260 Ga. App. 91, 93-95 (1) (579 SE2d 80) (2003) (physical precedent only) (direct testimony that bank teller received call from customer authorizing transaction not inconsistent with circumstantial evidence that transaction was not properly documented and not customer's usual practice).

The officers were entitled to rely on the information they received from Lieutenant O'Neal that Belt was a suspect in a crime. *Gay v. State*, 233 Ga. App. 738, 739 (2) (505 SE2d 29) (1998) (reasonable suspicion to stop suspect based on information supplied by transit supervisor, a former police officer, who observed a

11

partially concealed weapon on his person.) Having "arguable reasonable suspicion" to detain Belt and ask for his identification, the officers were acting in the course of their official duties when they asked Belt to produce identification. Summary judgment therefore should have been granted on the ground of qualified immunity from a malicious prosecution claim under 42 USC § 1983.

While we must reverse the denial of summary judgment here, the trial court did correctly note that "Georgia law does not authorize law enforcement officers to request identification from citizens for no reason and charge them with obstruction if they fail to comply." The outcome in this appeal is applicable only in the very limited circumstances of qualified immunity in a federal malicious prosecution claim as applied to the facts of this case. We therefore take this opportunity to reiterate our support for the proposition that

> in a first-tier encounter, police may approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave. But it is well settled that a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter. Indeed, even running from police during a first-tier encounter is wholly permissible. And an individual may refuse to answer or ignore

the request and go on his way if he chooses, for this does not amount to any type of restraint.

(Citations, punctuation, and footnotes omitted.) *Ewumi v. State*, 315 Ga. App. 656, 658 (1) (727 SE2d 257) (2012). And even in the context of a qualified immunity claim, there is

> great importance placed on personal liberty by our common law tradition. The Court in *Terry*, while noting police officers' wide authority to investigate crimes, gave homage to our civil liberties and dismissed the notion that any such intrusion, even a lawful one, is *de minimis*. Said of the original *Terry* stop-and-frisk, "it is simply fantastic to urge that such a procedure performed in public by a policeman while the citizen stands helpless . . . is a 'petty indignity.' It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly.

(Emphasis in original.) *Kapila v. Jenkins*, 2009 U.S. Dist. LEXIS 38650 (IV) (S.D. Fla. 2009).

> *Judgment reversed. Barnes, P. J., and Branch, J., concur*.