**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 25-10817

————————————

WILLIE AARON GREEN,

*Plaintiff-Appellant,*

*versus*

JONATHAN SURINE,
  in his individual capacity,
CARL MITCHAM,
  in his individual capacity,

*Defendants-Appellees,*

UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNTY
GEORGIA,
  The,

*Defendant.*

————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 3:23-cv-00125-CDL

————————————

Before ROSENBAUM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

On the night of May 13, 2023, Officer Jonathan Surine and Sergeant Carl Mitcham responded to a noise complaint concerning music played at the Athens Sports Arena (the "Arena"), a sport and event venue in Athens, Georgia. Willie Green, one of the Arena's owners, resisted the officers' attempt to issue him a citation for the noise, claiming that his property was exempt from the relevant noise ordinance, and refused to provide identification. After repeated requests, and a warning that his refusal to provide identification was unlawful resistance and could result in his arrest, the officers arrested Green for obstruction of a police officer. Shortly after his arrest, the solicitor general for Athens-Clarke County dismissed both the noise citation and the obstruction charge.

Green sued the officers under 42 U.S.C. § 1983, alleging that the officers violated his Fourth Amendment right by arresting him for obstruction without probable cause. After discovery and briefing, the district court granted the defendants' motion for summary judgment and dismissed Green's lawsuit. The court concluded that the officers had arguable probable cause to issue the citation and arrest Green, and thus the officers were protected by qualified immunity.

After careful consideration, and for the reasons that follow, we affirm the district court because the officers had arguable probable cause both to issue the citation and arrest Green.

## I.    BACKGROUND[1]

The Arena, of which Green is a part owner, is a sport and event venue located in a neighborhood in the extreme southwest part of Athens-Clarke County.[2]    The Arena is on Commerce Boulevard, a small, looped side street populated by other businesses.  Immediately to the west of the Commerce Blvd. loop upon which the Arena sits is a residential neighborhood populated by around one hundred single-family homes, including the complainant's (the "Residential Neighborhood").

On the evening of Saturday, May 13, 2023, around 7:45 p.m., Officer Surine responded to a noise complaint from a resident on Park West Boulevard, one of the two main streets of the Residential Neighborhood.  Surine traveled to the home of the complainant, where he could hear audible noise coming from the direction of the Arena.  Surine observed that the Residential

---

[1] This case comes before us on appeal from a grant of summary judgment.  As such, we draw the facts in this opinion from the parties' motion for summary judgment briefing materials and present them in the light most favorable to Green as the non-moving party.  *Wood v. Kesler*, 323 F.3d 872, 875 n.1 (11th Cir. 2003).

[2] We take judicial notice of a Google map depicting the general geographic features of the neighborhood in which the events of this case took place "as a source whose accuracy cannot reasonably be questioned," just as our sister circuits have done in similar circumstances, and as we have done with maps in the past.  Fed. R. Evid. 201; *see United States v. Proch*, 637 F.3d 1262, 1266 n.1 (11th Cir. 2011); *Pahls v. Thomas*, 718 F.3d 1210, 1216 n.1 (10th Cir. 2013); *McCormack v. Hiedeman*, 694 F.3d 1004, 1008 n.1 (9th Cir. 2012); *United States v. Julius*, 14 F.4th 752, 756 (7th Cir. 2021) (collecting cases).

Neighborhood was composed of single-family homes, and so assumed they were zoned as single-family residential. At some point between when he received the notice from dispatch and heading to the Arena, Surine looked up the complainant's residence on qPublic.[3]  He believed that the qPublic information concerning the complainant's residence confirmed his belief that the Residential Neighborhood was zoned residential.[4]  Surine then drove to the Arena and confirmed that it was the source of the noise—loud music from a party.

After Surine arrived on the scene at the Arena, the event host called Green, who made his way over. When Green arrived, he and Surine began discussing the noise complaint. Surine informed Green that the Arena was violating Athens-Clarke County Code Ordinance 3-5-24 (the "Noise Ordinance") and read him the relevant code section.[5]  Green insisted that Arena was

---

[3] qPublic is a public database of information allowing users to view local government information and related records online, including tax and zoning information for plots of land.

[4] qPublic reported the complainant's home "Class" as "R3-Residential." Just below the "Class" line entry was language stating that "[t]his is for tax purposes only. Not to be used for zoning." A little further below the "Class" category was a "Zoning" category, which listed the property's zoning classification as "C-G," a commercial zoning class.

[5] The Noise Ordinance reads, in relevant part,

> It is unlawful for any person or persons to play, use, operate, or permit to be played, used, or operated any radio receiving device, television, stereo, musical instrument, phonograph

exempt from the Noise Ordinance.  During this conversation, Surine asked Green several times to provide identification, and explained that he needed Green's identification to be able to issue the written citation.  Each time Green refused to comply.

After some discussion, Green asked for a supervisor.  Surine called Sgt. Mitcham, told him of the course of the interaction, of Green's request for a supervisor, and that he believed he had probable cause to issue a citation for violation of the Noise Ordinance.  After Mitcham arrived, he advised Green that the Arena was subject to the Noise Ordinance because, even though the Arena was zoned commercial, the Arena fell within the scope of the Noise Ordinance because its noise was reaching the Residential Neighborhood which the officers believed to be zoned residential.  The officers concluded that the Residential Neighborhood was zoned residential because it was composed of

---

sound amplifier or other machines or devices for the producing, reproducing or amplifying of sound and/or noise at such a volume and in such a manner so as to create, or cause to be created, any noises or sounds which are plainly audible at a distance of 300 feet or more from the building, structure or vehicle, or in the case of real property, beyond the property limits, in which it is located, whichever is farthest . . . between the hours of 7:00 a.m. and 12:00 midnight on Friday and Saturday.

Athens-Clarke Cnty. Code of Ordinances § 3-5-24(c)(1)(a).  The restriction in § 3-5-24(c)(1)(a) "shall apply to noises and/or sounds generated by a commercial entity that are plainly audible within any single-family residential zoning district more than 300 feet beyond the property boundary of the property from which the noises and/or sounds emanate." *Id.* § 3-5-24(c)(8)(a).

single-family homes, and from reviewing the qPublic page about the complainant's property. Green continued to insist that his business was exempt from the Noise Ordinance and refused the officers' subsequent requests to provide his identification.

At this point, the officers warned Green that continued refusal to provide them identification would be obstruction of their attempts to fulfill their lawful duties, and that he would be subject to arrest. Green reiterated his refusal. The officers then arrested Green and charged him with obstruction of a police officer and cited him for violation of the Noise Ordinance.

The citation and obstruction charge were eventually dismissed by the solicitor general of Athens-Clarke County. Concerning the Noise Ordinance citation, the Solicitor General explained that, "[w]hile someone in the officer's position that night might reasonably believe that the [Residential Neighborhood] was part of a 'single-family residential zoning district,' a subsequent review . . . determined that the neighborhood is contained entirely within a commercial zone," and was thus exempt from the ordinance. Concerning the obstruction charge, although "the [s]tate could [have] arguably proceed[ed] with the charge of [o]bstruction," "given the totality of the circumstances, the [s]tate believe[d] it [was] in the interest of justice to terminate prosecution of th[e] case."

Following the dismissal, Green brought this lawsuit against the officers alleging they violated his Fourth Amendment right

when they arrested him without probable cause.[6]   The officers moved for summary judgment, arguing that they had arguable probable cause for both the arrest for obstruction and issuance of the Noise Ordinance citation, and therefore they were protected by qualified immunity.   The district court agreed and granted the officers' motion.   It found that, "although Defendants turned out to be mistaken in their application of the noise ordinance, they had arguable probable cause to cite Green for violating it" because their mistakes were "reasonable and honest."   As for the obstruction charge, the district court noted that the officers were investigating a noise ordinance violation for which they had arguable probable cause.   Thus, Green's refusal to provide identification obstructed the officers' lawful investigation.

This appeal timely followed.

## II.    DISCUSSION

We review a district court's order granting summary judgment *de novo*. *Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023).

Green argues that his arrest for obstruction violated his Fourth Amendment right because the officers lacked probable cause.   More specifically, Green argues that his resistance was lawful under Georgia law because the investigation he

---

[6] Green also sued Athens-Clarke County.  However, after the County filed its motion for summary judgment, Green voluntarily dismissed the County from the case.

obstructed—the officers' attempt to issue the noise citation—was being pursued without probable cause, and thus was itself not lawful.  The defendants counter that qualified immunity defeats Green's Fourth Amendment claims because they had arguable probable cause to cite the Arena, through its agent Green, for violation of the Noise Ordinance.

Government officials, including police officers, are protected by qualified immunity when they act in the exercise of their discretionary duties.  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  Once an official proves he was acting within his discretion, the plaintiff can rebut the official's entitlement to qualified immunity "by showing that the government officials (1) committed a constitutional violation; and (2) that this violation was 'clearly established' in law at the time of the alleged misconduct."  *Edger*, 84 F.4th at 1235.

Here, the parties do not dispute that the defendants acted within the scope of their discretionary authority.  Their dispute turns on whether the defendants' actions violated clearly established Fourth Amendment law.  For Fourth Amendment purposes, arrests are seizures and are unreasonable unless supported by probable cause.  *See Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007).  Furthermore, we have said that an officer is entitled to qualified immunity if he had even "arguable probable cause."  *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).  "In the false arrest context, arguable probable cause exists where a reasonable officer, looking at the entire legal

landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Edger*, 84 F.4th at 1236–37 (quotation omitted). The arguable probable cause inquiry is not a broad general analysis, but "must be undertaken in light of the specific context of the case." *Id.* at 1237. In other words, "whether an officer possesses either actual or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Id.*

The officers had arguable probable cause that the Arena was violating the Noise Ordinance. The Noise Ordinance makes it a crime for commercial businesses to make noise which can be heard in a "single-family residential zoning district" that is at least 300 feet away from the business. *See* Athens-Clarke Cnty. Code of Ordinances § 3-5-24(c). It is undisputed that the Arena and the Residential Neighborhood sit in the same commercially zoned neighborhood. The only dispute is whether the officers made a reasonable mistake when they concluded that the Residential Neighborhood was a "single-family residential zoning district."

The officers relied on two pieces of information to conclude that the Residential Neighborhood was zoned as single-family residential. First, the officers observed that the Residential Neighborhood was composed of single-family homes. Second, the officers used the qPublic database to look up the zoning information relating to the complainant's home in the Residential Neighborhood. They observed that the qPublic database reported the complainant's home "Class" as "R3-Residential." According to

Sgt. Mitcham, "[a]t that point we were going off of the belief that a single-family residence would be zoned as such, and off of qPublic [data]." With their observation corroborated by what they saw on the qPublic website, the officers concluded that the Residential Neighborhood was a "single-family residential zoning district" under the Noise Ordinance.

Green argues that the officers' conclusion was flawed, as they "turn[ed] a blind eye to information clearly before the officer[s] that would have shown Green's innocence," thus denying them probable cause to arrest Green. Green points to two pieces of information on qPublic's page for the complainant's residence. First, that the R3-Residential classification of the complainant's home was expressly caveated as a tax, not zoning, classification by the language (immediately beneath the "Class" information) stating that "[t]his is for tax purposes only. Not to be used for zoning." Second, that just beneath the "Class" information was a "Zoning" categorization, which listed the property's zoning classification as "C-G," a commercial zoning class.[7]

---

[7] Green also argues that the officers cannot rely on the qPublic website for their arguable probable cause analysis because, since their body camera footage does not show them viewing the website, we should infer that they did not access the website during their investigation of the noise complaint. We disagree for two reasons. First, there are several gaps in the body camera footage during which the officers could have accessed the website, and they stated in sworn testimony that they did access it. Second, removing the qPublic information from the analysis is harmful to Green's argument, not the officers. Green relies on the officers' mistaken interpretation of the qPublic database to argue their lack of probable cause. Without the qPublic database

Green's argument is misplaced in light of our arguable probable cause caselaw. To be sure, the officers were wrong about the facts. But the inquiry is whether they had "arguable" probable cause, an inquiry focused on what a reasonable officer's interpretation of the law would be considering the facts facing the officer defendants. *Edger*, 84 F.4th at 1236–37. Here, it was reasonable for the officers, observing the class of the complainant's home on the qPublic website in the broader context of the composition of the Residential Neighborhood, to not look further than the "Class" information in reaching the honest but mistaken belief that the neighborhood was zoned residential. The officers' mistaken conclusion about the Residential Neighborhood's zoning status is especially reasonable considering the degree of physical separation between the Residential Neighborhood and Arena's commercial district on Commerce Boulevard. While the two areas are next to each other, they are separated by hundreds of feet, which supports the officers' inference that they are part of separate subdivisions and therefore separate zoning classifications. Thus, considering the broader factual and legal context facing the officers, they had arguable probable cause that the Arena was violating the Noise Ordinance.[8]

---

information, the officers' only information about the zoning of the Residential Neighborhood is their observation about its composition—a plainly reasonable basis to conclude that it is a single-family residential zoning district.

[8] Green's reliance on *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004), is also misplaced as the facts of *Kingsland* are not analogous to the facts here. In *Kingsland*—which we called "unique and exceptional"—there was strong

The officers also had probable cause to arrest Green for obstruction because his refusal to provide identification upon request was an unlawful interference with the officers' duty. "A knowing and willful refusal to provide identification to an officer acting in the lawful discharge of his official duties may constitute obstruction under OCGA § 16–10–24(a)."[9] *Brown v. GeorgiaCarry.org, Inc.*, 331 Ga. App. 890, 892–93 (2015). Here, as explained above, the officers were acting in the lawful discharge of their official duties when they requested Green's identification because they were attempting to issue a citation to Green for which they had arguable probable cause.

Green's actions in refusing to provide his identification were knowing and willful. The officers asked Green numerous times for his identification. Surine informed him that without his identification they would not be able to issue the citation—thus conveying to Green the knowledge that continued resistance meant hindering the officers' objective of issuing the citation. The officers also warned Green that continued refusal may cause them

circumstantial evidence that the officers potentially fabricated the fact that they detected cannabis odor so that they could arrest the plaintiff, and in doing so, "chose to either ignore or misrepresent" the facts behind the arrest. *Id.* at 1226–27, 1231. Green offers no evidence beyond the content of the qPublic site to support his contention that the officers intentionally ignored the information on the site.

[9] OCGA § 16–10–24(a) states that "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor."

to arrest him for obstruction. And so, when Green continued to refuse to comply, his decision to do so was knowing and willful despite the possible consequences. Thus, the officers had probable cause to arrest Green, they did not violate Green's Fourth Amendment right, and they are protected by qualified immunity.

### III.    CONCLUSION

Considering the analysis above, the district court did not err in concluding that qualified immunity protected the defendant officers.[10]

**AFFIRMED.**

---

[10] Green's motion to take judicial notice of the contents of certain qPublic pages is denied as moot.