A99A2255. CLARK et al. v. THE STATE.
(532 SE2d 481)

ANDREWS, Presiding Judge.

Tiffney Latrice Clark and Dwon Anthony Johnson appeal from the judgment entered on the jury's verdict following their convictions of possession of marijuana with intent to distribute (both), possession of cocaine with intent to distribute (both), possession of marijuana (Clark), driving with a cracked windshield and driving with no tag (Johnson).

All eight enumerations deal with issues surrounding the initial stop of Johnson's vehicle without a warrant and the two search warrants which were thereafter obtained for the residence of Clark and Johnson and the bank where Johnson maintained his checking account and safe deposit box.

In determining the legality of a search, this Court may consider all relevant and admissible evidence of record, including that introduced at the suppression hearing as well as that produced during trial, viewing that evidence in a light most favorable to the verdict. *Fritzius v. State*, 225 Ga. App. 642, 645 (484 SE2d 743) (1997); *Underwood v. State*, 218 Ga. App. 530 (1) (462 SE2d 434) (1995).

So viewed, the evidence was that Officer Ware of the Multi Agency Narcotics Squad (MANS) was contacted by an informant regarding Johnson on Wednesday, May 27, 1998. Ware met the informant in person that day around 3:30 p.m. The informant[1] had not previously provided information to Ware or other officers but indicated that Johnson was a major distributor of marijuana and cocaine. The informant described Johnson as an African-American male, 6′ 2″ tall, weighing approximately 300 pounds. He advised Ware that Johnson charged $900 per pound of marijuana, $250 per quarter-pound of marijuana, and $1,000 per ounce of cocaine. Further, Johnson was said to own several vehicles, including a blue and silver

---

[1] The informant was identified during the hearing and thereafter testified pursuant to a subpoena requested by Johnson's attorney. He acknowledged having spoken to unidentified MANS agents about Johnson and drugs but would not be more specific at the hearing.

pickup truck bearing a drive-out tag. The informant also provided Johnson's pager number and said that Johnson lived off Cleveland Highway, giving directions which led to Darrell Lane Road.

On June 1, Ware spoke to the informant around 3:00 p.m. The informant advised he had talked to Johnson who said he was out of marijuana but could deliver an ounce of cocaine. During that conversation, the informant also provided a telephone number for Johnson. On June 2, Officer Ware was called by the informant around 10:40 a.m. The informant said he had talked to Johnson who said he was going to Atlanta to get more marijuana, he would be back in Gainesville in a couple of hours, and he would contact the informant. Based on this information, Ware met with Hall County Deputy Sheriff Nix, a patrol officer, and other MANS officers and set up a surveillance for a blue and silver Chevy or GMC pickup truck with a drive-out tag, driven by Johnson.

Around 12:40 p.m., the informant contacted Ware and advised that Johnson had just contacted him and said he would be at a predesignated location at the intersection of Bradford and Myrtle Streets in approximately 15 minutes. Surveillance was set up at that location, and Officer Nix, in his marked car, spotted a truck matching the description traveling on Main Street. The truck turned onto Myrtle Street, and Nix noticed that the paper drive-out tag "was faded . . . [and] curled up around the edges, it was faded, the writing was faded somewhat and appeared to [have] been there for some time." A drive-out tag may be legally used for only 30 days. It is not disputed that, whether Nix had spotted the tag or not, the truck was going to be stopped at the direction of Ware based on the informant's information. As Officer Nix testified, "[t]he plan that I had was to make the traffic stop on their request[,]" and he acknowledged that the curled drive-out tag was not the primary concern behind the stop.

At that time, Nix stopped the truck. Approximately nine other officers and a K-9 unit also participated in the surveillance and the stop. Johnson was driving, and Clark was in the passenger seat. Johnson produced his driver's license, insurance card, and a bill of sale dated January 9, 1998. Johnson was issued citations for not having his tag and for a cracked windshield.

Officer Ware asked Johnson if he had any drugs or weapons, which Johnson denied. Ware then asked Johnson if they could search the truck, and Johnson consented. When no substantial amount of marijuana was immediately located by Ware and Officer Neville, the K-9 unit, Officer Neece and Duke, went over the truck. Duke reacted to the floorboard area of the passenger's side, particularly Clark's purse, which was lying there. The purse contained less than an ounce of marijuana, and a marijuana seed was found on the floorboard.

Upon getting out of the truck, Clark was asked by Officer Neville

for her name and address. She refused to give any information.

Ware interviewed Clark at the scene of the stop, and she told him she had obtained the marijuana from a co-worker the day before and that she intended to give it to her grandfather. She also told Ware that she had been by her residence on Darrell Lane that morning while in possession of the marijuana. Clark denied that Johnson resided at that residence or kept clothing there but said he lived with his mother elsewhere.

Ware then proceeded to a magistrate, where he intended to obtain a search warrant based on the informant's information, Clark's possession of less than an ounce of marijuana, and her having been in her residence with that marijuana.[2] Prior to the issuance of the warrant, however, Ware received another telephone call from the informant who advised that Johnson had contacted him and said that he had been stopped and his vehicle searched. Johnson then told the informant he was en route to retrieve the drugs at the place where they were being kept. Ware had posted agents to watch the residence while he attempted to obtain a warrant, and, shortly after receiving the informant's call, Agent Weaver contacted Ware and said that Johnson had just pulled into the driveway and, upon observing the police car in the driveway, had immediately pulled out of the driveway and left the area.

A search warrant was obtained for Clark and Johnson's residence, based on both Ware's original affidavit and a handwritten sworn affidavit obtained by the magistrate, containing the information set out in the preceding paragraph. Upon execution of the warrant, a duffel bag containing five kilos of marijuana and three and one-half grams of cocaine was found in the kitchen of the residence. The marijuana was in 19 plastic bags containing amounts ranging from several ounces to a pound. Also in the duffel bag were additional packaging materials and an electronic scale. A second search warrant was obtained for Johnson's checking account and safe deposit box, based on his checkbook and the keys to the safe deposit box having been located and seized during the search of the apartment. In the safe deposit box was $8,000 in cash, in stacks held by rubber bands.[3] The checking account contained $9,282.09.

1. The first enumeration is that, because Clark was told she was or could be arrested under OCGA § 16-10-24 (a) (obstruction of an officer), that was an illegal application of that statute and the infor-

---

[2] This information was acknowledged by the State to be insufficient for issuance of a warrant for the residence.

[3] This cash was later placed in one of a series of lockers, and Duke reacted to the locker containing the money, indicating the money had been in the immediate presence of an illegal substance.

mation and items obtained by the ensuing searches of the residence and bank were illegally obtained and should have been suppressed.[4]

While, as argued by Clark, merely refusing to identify oneself to a police officer is not a crime, one may commit obstruction when knowingly and wilfully hindering an officer in investigating an offense committed by another. *Wagner v. State*, 206 Ga. App. 180, 182 (424 SE2d 861) (1992) (physical precedent only); see *Wynn v. State*, 236 Ga. App. 98, 99-100 (2) (511 SE2d 201) (1999). Here, Officer Nix had at least a reasonable suspicion that Johnson was driving without a proper tag, if not for investigation of possible drug possession by him.

Refusal to provide identification in such circumstances can be the basis for prosecution under OCGA § 16-10-24 (a), and whether one is guilty of such an offense is a question for the jury or other factfinder to determine. *Bailey v. State*, 190 Ga. App. 683, 684 (379 SE2d 816) (1989); *Hudson v. State*, 135 Ga. App. 739, 741 (2) (218 SE2d 905) (1975).

Therefore, Clark's argument that detaining her under threat of such a prosecution tainted the following searches is without merit.

2. The second enumeration is that the traffic stop was "pretextual" and in violation of the Fourteenth Amendment of the United States Constitution and Art. I, Sec. I, Par. XIII of the Georgia Constitution.

> In *Whren v. United States*, [517 U. S. 806 (116 SC 1769, 135 LE2d 89) (1996),] the United States Supreme Court held that when an officer sees a traffic offense occur, a resulting traffic stop does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop, and even if a reasonable officer would not have made the stop under the same circumstances. [See *State v. Owens*, 239 Ga. App. 722 (521 SE2d 860) (1999).]

*Smith v. State*, 240 Ga. App. 150, 151 (1) (522 SE2d 744) (1999). See also *Garmon v. State*, 271 Ga. 673, 678 (3) (524 SE2d 211) (1999).

In *Smith*, the officers had reasonable suspicion, at least, that Smith might be in possession of drugs but saw a traffic violation, an expired tag, before stopping Smith. This Court found that the traffic violation justified the stop. Here, regardless of the officers' underlying intentions, Nix's spotting the expired drive-out tag justified the stop.

There was no error in denying the motion to suppress on this ground.

---

[4] No charge for obstruction of an officer was actually filed.

3. Enumerations three, four, five and six[5] all attack the warrant issued to search the house and will be considered together.

> In determining probable cause for a search warrant, the magistrate is merely to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before (the magistrate), including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *DeYoung v. State*, 268 Ga. 780, 787 (7) (493 SE2d 157) (1997), quoting *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984). The trial court will then examine the issue, and its factual findings regarding probable cause for issuance of the warrant will be upheld unless clearly erroneous. *Bryant v. State*, 268 Ga. 616, 618 (6) (491 SE2d 320) (1997); *Williams v. State*, 267 Ga. 771 (4) (482 SE2d 288) (1997). Ultimately, this Court's role on review is to "determine if the magistrate had a 'substantial basis' for concluding that probable cause existed to issue the search (warrant)." *DeYoung* at 787 (7). See also *Grier v. State*, 266 Ga. 170, 172 (2) (b) (465 SE2d 655) (1996). And a reviewing court is to give substantial deference to the magistrate's decision to issue a search warrant after finding probable cause. Id.

(Footnote omitted.) *Abraha v. State*, 271 Ga. 309, 311 (1) (518 SE2d 894) (1999).

Clark and Johnson argue that there was no showing made to the magistrate of the informant's reliability. While there had been no previous information provided by this informant which could serve as a basis for determining his reliability, "the magistrate could determine the informant's reliability through other indicia. *Clark v. State*, 212 Ga. App. 486, 488-489 (441 SE2d 885) (1994) (informant demonstrated reliability by meeting with investigator and participating in controlled purchase)." *Branton v. State*, 240 Ga. App. 106, 107 (522 SE2d 694) (1999).

Here, as in *Branton*, the informant was willing to meet personally with Officer Ware, giving Ware an opportunity to evaluate his demeanor and credibility, and, although it was not completed, he volunteered to attempt to set up a buy from Johnson. Also, the basis of

---

[5] They are that the affidavit contained no facts allowing the magistrate to conclude drugs were stored there; that the informant was unreliable and the affidavit untrue; that material information concerning the informant was not provided to the magistrate; and that items seized were beyond the scope of the warrant.

the knowledge provided by the informant may compensate for a lack of showing of "veracity or reliability." Here, the informant was contacted after the traffic stop by Johnson who described the stop to him and stated that he was in the process of going to the location where the drugs were located. Immediately thereafter, Johnson showed up at the residence and fled upon seeing police. See *Illinois v. Wardlow*, 528 U. S. 119 (120 SC 673, 145 LE2d 570) (2000) (flight may provide reasonable suspicion for a *Terry*[6] stop).

Also, the specificity of the information provided by the informant, including Johnson's beeper number, phone number, and his intended destinations on two occasions, thereafter verified by officers' observations, provided indications of the reliability of the tip. *Alabama v. White*, 496 U. S. 325 (110 SC 2412, 110 LE2d 301) (1990); see *State v. Tucker*, 242 Ga. App. 3 (528 SE2d 523) (2000); *Dupree v. State*, 232 Ga. App. 573, 574 (502 SE2d 511) (1998).

Therefore, we conclude that the totality of the information provided along with the observations by police supported the magistrate's common sense decision that there was a fair probability that marijuana might be found at the residence.

Johnson relies strongly on Ware's failure to provide certain information about the informant to the magistrate and his attempt to mislead the magistrate, citing *Robertson v. State*, 236 Ga. App. 68 (510 SE2d 914) (1999), as a basis for suppressing the evidence.

The trial court concluded, as do we, that Ware did attempt to mislead the magistrate in his typed affidavit for the warrant on the residence by stating that:

> On June 02, 1998, affiant arrested Tiffany Clark for possession of marijuana following a traffic stop where she was found to be in possession of a quantity of marijuana. After being advised of her miranda [sic] warning, Clark stated that she resides at 3972 Daryl Lane, that being the premises to be searched, and that she had been at her residence on this date with the marijuana.

In fact, Clark told Ware that she obtained the small amount of marijuana from a co-worker and had not spent the previous three nights in the residence.

In *Robertson*, supra, the officer neglected to inform the magistrate that his informant had been arrested by him for DUI and had told the officer that he could provide information regarding the sale of narcotics in exchange for "help" on his DUI charge. The officer further knew, but did not reveal, that the informant was a convicted

---

[6] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

felon who was on probation or parole. The officer told the informant he could not promise anything but would make the court aware of his assistance. Thereafter, the informant called the officer and said he had been to Robertson's home and seen marijuana. The informant was very angry with Robertson because he had made an advance on the informant's "old lady." There, we concluded that the officer's failure to provide the magistrate with the informant's criminal background, pending criminal charges, possible revocation of his probation or parole, and his anger at Robertson deprived the magistrate of the opportunity to determine the reliability of the informant.

Here, Ware did not advise the magistrate that the informant had been arrested in White County on a "drug-related" charge and that the informant had implied that he and Johnson were former partners in a tattoo parlor. Ware had told the informant that, if the information provided regarding Johnson was corroborated, he would make a recommendation or speak to the district attorney on his behalf.

The informant's testimony at the hearing on the motion to suppress was that he had no deal with anyone from the Hall County District Attorney's office regarding anything, because "there is nothing pending against me for me to have something against me."

While we strongly disapprove, as did the trial court, of the officer's admitted obfuscation of the facts relating to Clark's possession of the marijuana and her presence at the residence with it, we do not believe the record in this case compares with the facts in *Robertson*. There, it was undisputed that the informant was a convicted felon facing possible revocation of probation or parole and that he had a personal grudge against Robertson.

Here, having had a prior business relationship, with no further evidence regarding it, does not rise to that level. In fact, it could be said to have supported the reliability of the informant because of his knowledge of Johnson.

Further, the record is disputed regarding the alleged pending charges against the informant. See *Mitchell v. State*, 239 Ga. App. 735, 737 (1) (521 SE2d 873) (1999).

"Because of the Fourth Amendment's strong preference for searches conducted pursuant to a warrant, the resolution of close questions on the determination of probable cause for a warrant should favor validating the warrant. [Cits.]" *Branton*, supra at 108.

While this is one of those cases, we do not find the trial court's conclusion that the handwritten affidavit supported the issuance of the warrant for the residence to be clearly erroneous. Denial of the motion to suppress on these grounds was not error.

4. The seventh enumeration is unsupported by argument or citation of authority and is deemed abandoned. Court of Appeals Rule 27 (c) (2).

5. Johnson also attacks the warrant issued to search his checking account and safe deposit box. The affidavit in support of that warrant set out the results of the search of the residence; the discovery at the residence of the checkbook and safe deposit box keys; the approximate street value of the marijuana found was $16,500 and the cocaine $400; and that, based on the affiant's training and experience, "proceeds from drug distribution are maintained several different ways. Two such ways of maintaining drug proceeds is [sic] in a safe deposit box and checking accounts." Affiant also, based on his training and experience, had commonly found that "United States Currency which comes from the distribution of drugs is maintained by the drug dealer in many different ways, and one of the common ways is in a Bank."[7]

Using the criteria set out above, we find adequate probable cause for the issuance of the warrant for the checking account and safe deposit box. *Ehrlich v. State*, 189 Ga. App. 294, 295 (375 SE2d 272) (1988).

*Judgment affirmed. Ruffin and Ellington, JJ., concur in judgment only.*

DECIDED MARCH 24, 2000 —
RECONSIDERATION DENIED APRIL 6, 2000 — 

*Herbert Shafer,* for appellants.
*Lydia J. Sartain, District Attorney, Deborah R. Mitchell, Assistant District Attorney,* appellee.

---

[7] Although a purported copy of the final order in the condemnation case against the money is appended to the State's brief, it has not been considered because this Court considers only matters of record.