**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 19, 2015**

# In the Court of Appeals of Georgia

A15A1398. ROBINSON v. METRO ATLANTA RAPID TRANSIT AUTHORITY et al.

BARNES, Presiding Judge.

Alex Robinson appeals from the trial court's order granting summary judgment to the Metropolitan Atlanta Rapid Transit Authority ("MARTA"), Officer Paris Swinson, Officer V. Samuel, and Officer J. Boggs. (hereinafter, collectively "MARTA.") Robinson filed the underlying complaint against MARTA and the officers for personal injury caused by the officers alleged use of excessive force, MARTA's failure to properly train and supervise the officers, and false arrest. In granting MARTA's motion for summary judgment, the trial court found that the officers were entitled to qualified immunity for all claims arising under 42 USC §1983, that MARTA was not liable for any supervisory claims under 42 USC §1983, and that Robinson had failed to state a false arrest claim.

On appeal, Robinson contends that the trial court erred in granting summary judgement to MARTA because there were issues of material fact as to whether there

existed probable cause for the officers to arrest him, the trial court erred in finding that the officers were entitled to qualified immunity because the force exhibited on Robinson was excessive and unwarranted, and summary judgment was not properly granted on the negligent supervision and training claim because MARTA had concealed evidence pertaining to Robinson's arrest. Upon our review, we affirm.

"On appeal from the grant of summary judgment, this [C]ourt conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation omitted.) *Donovan v. State Farm Mut. Auto. Ins. Co.*, 329 Ga. App. 609, 610 (765 SE2d 755) (2014). On December 31, 2011, Robinson, an Atlanta police officer, was off duty and celebrating New Year's Eve near Underground Atlanta at the Peach Drop. Robinson became uncomfortable when he smelled burning marijuana, heard gunshots coming from nearby, and the size of the crowd increased, and decided to leave. At approximately 11:45 p.m., as he and his companion walked through the crowd toward the Five Point MARTA station located near a MARTA police precinct, a man, later identified as Christopher Williams, blocked him and told him that "no one's getting past me if you're not the [expletive] police." Robinson told him that he was a police officer, but Williams refused to let the couple

2

pass. When Williams, who appeared intoxicated, turned to argue with another person, Robinson attempted to slip past him, but William hit Robinson in the back. Robinson and Williams exchanged words, and as Robinson walked away, Williams followed the couple and hit Robinson harder. Robinson attempted to walk away again, but Williams grabbed his jacket and Robinson hit him, causing Williams to fall to the ground.

Robinson recalled that, with no warning and within "a couple of seconds," he was tased by Officer Samuel. Robinson eventually fell to the ground after being tased, and continued to be tased for "three to four seconds." When the taser was turned off, three or four officers piled on top of Robinson, which caused his face to hit the pavement. After Robinson was handcuffed, as he walked to the MARTA precinct approximately 20 yards away, one of the officers twisted Robinson's wrist. Robinson was later released and not charged with any offense. Williams was also handcuffed, arrested and later charged with disorderly conduct. Although Robinson told officers that he was not injured and did not require medical treatment, he later alleged that he had suffered injuries to his front left rib cage, right wrist, bruising to his face, and a fractured right patella.

Officer Boggs and Officer Swinson were both on the scene and involved in Robinson's arrest. Officer Swinson did not see the fight between Robinson and Williams, but responded to secure the scene and help out other officers after getting the call from

3

dispatch of "a 29 fight." He also escorted Robinson to the precinct after Robinson was arrested. From his position on a nearby wall, Officer Boggs saw Williams grab Robinson by the throat and throw him to the ground, but he "did not know who the primary aggressor was." Officer Samuel did not witness how the altercation started, but "witnessed the fight itself."

1. Robinson first contends that the trial court erred in granting MARTA's motion for summary judgment because issues of material fact exist as to whether there was probable cause to arrest him. Robinson alleges that his due process rights were violated under 42 USC § 1983 because he was arrested without probable cause.

"[C]ourts must consider the issue of a government employee's qualified immunity from liability as the threshold issue in a suit against the officer in his personal capacity." (Citation and punctuation omitted.) *Anderson v. Cobb*, 258 Ga. App. 159, 160 (2) (573 SE2d 417) (2002).

> Qualified immunity gives government officials performing discretionary functions complete protection from individual claims brought pursuant to 42 USC § 1983, if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Whether qualified immunity protects an official from suit is a question of law. We review the trial court's ruling on summary judgment

4

de novo, viewing the facts in the light most favorable to the nonmoving party.

(Citations and punctuation omitted.) *Whitten v. Wooten*, 295 Ga. App. 281, 283 (671 SE2d 317) (2008). See also *Thomas v. Holt*, 221 Ga. App. 345, 347-48 (1) (471 SE2d 300) (1996).

Robinson does not dispute that the officers were performing a discretionary function when they arrested him the night in question. He claims that there are multiple issues of material fact as to the probable cause for the officers to arrest him.

> Probable cause exists if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense. However, the appropriate inquiry for qualified immunity is not whether there was probable cause, but whether there was "arguable" probable cause to arrest. In other words, we must determine whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest.

(Citations and punctuation omitted; emphasis omitted.) *Pickens v. Hollowell*, 59 F.3d 1203, 1206 (II) (A) (11th Cir. 1995).

> Whether probable cause existed for an arrest is a jury issue to the extent that a dispute exists as to the facts known to the officer relevant to the

5

determination of probable cause. Where the facts known to the officer are not disputed, probable cause is an issue of law for the court. . . . [T]he standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate.«»

(Citations and punctuation omitted.) *Kline v. KDB. Inc.*, 295 Ga. App. 789, 792 (1) (673 SE2d 516) (2009).

Pursuant to OCGA § 17-4-20 (a) (2), a law enforcement officer is authorized to make an arrest for a criminal offense without a warrant under the following exigent circumstances:

> *if the offense is committed in such officer's presence or within such officer's immediate knowledge*; if the offender is endeavoring to escape; if the officer has probable cause to believe that an act of family violence, as defined in Code Section 19-13-1, has been committed; if the officer has probable cause to believe that an offense involving physical abuse has been committed against a vulnerable adult, who shall be for the purpose of this subsection a person 18 years old or older who is unable to protect himself or herself from physical or mental abuse because of a physical or mental impairment; or for other cause if there is likely to be failure of justice for want of a judicial officer to issue a warrant.

In Georgia, a person commits simple battery when he either "(1) intentionally makes physical contact of an insulting or provoking nature with a person of another; or (2)

intentionally causes physical harm to the other." OCGA § 16-5-23 (a). Given the circumstances known to the officers at the time they observed the incident – that Robinson was involved in a physical altercation in an extremely crowded venue that included families with children only minutes before midnight on New Year's Eve – the officers had probable cause to lawfully arrest Robinson for simple battery, if not other charges. Although Robinson maintains that he acted in self-defense and was not a willing participant in the fight, but an unarmed victim, "arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances presents a sufficient basis for believing that an offense has been committed." *Dahl v. Holley*, 312 F. 3d 1228, 1234 (11th Circ. 2002). See also *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997).

2. Robinson also asserts that the trial court erred in granting MARTA summary judgment because the force utilized in tasing him was excessive and unwarranted. He maintains that the officers were not entitled to qualified immunity because he was not acting in a violent or hostile manner before he was tased and physically attacked by the officers.

> The threshold inquiry is whether, construing the facts in favor of [Robinson], the record shows that [the officers'] actions constituted excessive force in violation of the Fourth Amendment. A claim that an

7

officer used excessive force during an arrest is properly analyzed under the Fourth Amendment's objective reasonableness standard.

(Citations and punctuation omitted) *Kline v. KDB. Inc*., 295 Ga. App. at 794. In such a claim, "an arresting officer is entitled to qualified immunity if the officer's actions were objectively reasonable – in other words, if a reasonable officer under the same circumstances would have believed the force used was not excessive." *Whitten v. Wooten*, 295 Ga. App. at 283. See also *Bell v. City of Albany*, 210 Ga. App. 371, 374 (436 SE2d 87) (1993).

> [T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application[;] however, its proper application requires careful attention to the facts and circumstances of each particular case, *including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.*

(Emphasis supplied.) Id. at 374-375. Moreover,

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness

8

must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

(Citations and punctuation omitted.) *Bell v. City of Albany*, 210 Ga. App. at 375. "[T]he reasonableness inquiry in an excessive force case is an objective one" and "if a reasonable officer under the same circumstances would have acted similarly, then [the officers are ] entitled to the shield of qualified immunity." Id.

In these circumstances, it would not have been clearly evident to a reasonable police officer that the officer's use of force was excessive or unreasonable. Given that there was no evidence that Officer Samuel knew who instigated the fight, under the extreme circumstances, including the time, place, and the need to exercise quick measures to control a violent altercation that may or may not have escalated, the officers were entitled to qualified immunity for their actions.[1] Thus, the trial court did not err in so finding in its grant of MARTA's motion for summary judgment.

---

[1] According to the MARTA Police Department's policy, tasing is "analogous to oleoresin capsicum (OC) spray on the use of force continuum . . . and involve[s] the same basic justification." OC is more commonly known as pepper spray. Per the department's policy, the taser should not be used on handcuffed prisoners, absent certain overt assaultive behavior, on a suspect who does not use violence or force against an officer or another person, in potentially flammable environments, or in an environment where the suspect's fall could result in death. None of those situations apply here.

3. Robinson's claim that MARTA is liable under 42 USC §1983 for its negligent training and supervision of the officers is also meritless. "In the absence of any Fourth Amendment violation by [the officers] during the arrest, there is no basis for [Robinson's] claim against [MARTA] under 42 USC § 1983." *Kline v. KDB. Inc.*, 295 Ga. App. at 795 (3).[2] See also *Bontwell v. Department of Corrections*, 226 Ga. App. 524, 528-529 (5) (486 SE2d 917) (1997).

Accordingly, the trial court correctly granted summary judgment in favor of MARTA on this claim.

*Judgment affirmed. Ray and McMillian, JJ., concur.*

---

[2] "There is no respondeat superior liability under § 1983; rather, a plaintiff must point to some official policy or custom which resulted in the injury. . . . [Robinson] must prove that [MARTA] deprived him of a constitutional right pursuant to an impermissible or corrupt policy which is intentional and deliberate." *Carter v. Glenn*, 243 Ga. App. 544, 545 (1) (533 SE2d 109) (2000).