**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 27, 2022**

# In the Court of Appeals of Georgia

A22A0314. BROOKS v. PALMER.

DILLARD, Presiding Judge.

Shantai Brooks appeals the trial court's grant of Andrew Palmer's motion to dismiss her complaint against him, which alleged claims of false arrest, false imprisonment, and excessive force.[1] In doing so, Brooks contends the trial court erred

---

[1] Other than referencing her false-imprisonment and excessive-force claims in passing in the opening paragraph of her brief, Brooks does not mention—much less make any legal arguments regarding—those claims. As a result, she has abandoned any challenge to the trial court's dismissal of those claims, and we will not address them. *See Grogan v. City of Dawsonville*, 305 Ga. 79, 89 (4) n.7 (823 SE2d 763) (2019) (explaining that this Court will not address potential issue or argument that appellant did not raise on appeal); *Farmer v. Dep't of Corr.*, 346 Ga. App. 387, 394 (2) (816 SE2d 376) (2018) ("[M]ere conclusory statements are not the type of meaningful argument contemplated by our rules." (punctuation omitted)); *Morton v. Macatee*, 345 Ga. App. 753, 757 (1) (a) (815 SE2d 117) (2018) (holding that appellant abandoned this enumeration of error by "failing to provide a single citation to authority as required by the rules of this Court); *Reed v. City of Atlanta*, 136 Ga. App. 193, 194 (4) (220 SE2d 492) (1975) (holding that an enumeration of error is

in finding that Palmer (a police officer) was entitled to qualified immunity as to her false-arrest claim, arguing that he lacked probable cause to arrest her. For the reasons set forth *infra*, we affirm.

Construing the complaint in the light most favorable to Brooks with all doubts resolved in her favor,[2] the record shows that on June 12, 2017, she entered a C&C Beauty store to purchase two products. When Brooks was checking out, she realized that she had a product she previously purchased from the store in her purse, and she advised the cashier this product was "not useable." The cashier then told the manager, John Kim, about Brooks's complaint, and according to Brooks, Kim was "rude, disrespectful, and made accusatory statements" directed at her. At this point, Brooks decided to leave the store without buying anything because of Kim's behavior.

Brooks returned to her vehicle, but after a few minutes, she realized that she forgot to take the defective product back from the cashier, so she left her car running

---

neither argued nor briefed on appeal is considered abandoned); Cᴛ. Aᴘᴘ. R. 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

[2] *See Marshall v. McIntosh Cty.*, 327 Ga. App. 416, 416 (759 SE2d 269) (2014) ("On appeal, we review de novo the trial court's grant of a motion to dismiss a complaint. We construe the complaint in the light most favorable to the plaintiff, with all doubts resolved in her favor." (citation omitted)).

and went back inside the store to get it. When she did so, Kim gave her the product back, but continued to be rude and disrespectful. In response, Brooks asked Kim for his name and the store's address, so she could report him to the Better Business Bureau. But Kim refused to provide Brooks with any information, and instead called 911.[3] Kim told the dispatcher, "[w]e have a customer here and she brought something back [unintelligible]. [S]he don't even have a receipt. I was wondering if you could send an officer to resolve this problem." Importantly, after Brooks returned to the store, neither Kim nor anyone else associated with C&C Beauty asked her to leave.

Eventually, Brooks left the store to turn her car engine off, and at the same time she was walking back to her car, Palmer—the responding officer—arrived. Brooks stopped Palmer and explained that she needed his help in getting certain information from the store's manager. Palmer then asked Brooks for identification, but she refused to provide it. As a result, Palmer arrested Brooks for obstruction of an officer. And according to Brooks, she was physically injured during the arrest and subsequently suffered emotional distress.

---

[3] According to Brooks, she was the one who initially wanted to call the police, but because she had to go to her car to charge her phone, Kim made the call instead.

On December 9, 2019, Brooks filed a complaint against Palmer under 42 USC § 1983,[4] alleging claims of false arrest, false imprisonment, and the use of excessive force. Palmer answered the complaint, claiming to lack knowledge as to whether to admit or deny the vast majority of the complaint's allegations. In addition, Palmer filed a motion to dismiss the complaint for failure to state a claim under OCGA § 9-11-12 (b) (6),[5] asserting, *inter alia*, that he was entitled to qualified immunity from

---

[4] *See* 42 USC § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .").

[5] *See* OCGA § 9-11-12 (b) (6) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that [certain] defenses may, at the option of the pleader, be made by motion in writing[,] [including][,] . . . .[f]ailure to state a claim upon which relief can be granted."); *Austin v. Clark*, 294 Ga. 773, 773-74 (755 SE2d 796) (2014) (considering whether defendants were entitled to qualified immunity when they filed a OCGA § 9-11-12 (b) (6) motion to dismiss the complaint for failure to state a claim).

Brooks's claims. And following a hearing on the matter,[6] the trial court granted Palmer's motion to dismiss the complaint on that basis. This appeal follows.

In her sole claim of error, Brooks argues the trial court erred in finding that Palmer was entitled to qualified immunity from her lawsuit under the circumstances of this case. In doing so, she claims the court failed to construe the pleadings and all reasonable inferences from those pleadings in her favor, thereby basing its ruling on inferences and speculation with no factual basis. We disagree.

When considering the question of whether the trial court erred in granting a motion to dismiss based on qualified immunity, we are mindful that "[a] motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim."[7] And if, within the framework of the complaint, "evidence may be introduced which will sustain a grant of relief to the

---

[6] The trial court's order indicates that a hearing was held on Palmer's motion *via* Zoom, but the transcript of the hearing is not included in the record. Regardless, given that this is an appeal from the grant of a motion to dismiss, we are limited to considering the facts alleged in the complaint, and thus, the hearing transcript is not necessary for the resolution of this appeal. *See supra* note 2.

[7] *Everson v. Dekalb Cty. Sch. Dist.*, 344 Ga. App. 665, 668 (2) (811 SE2d 9) (2018) (punctuation omitted); *accord Austin*, 294 Ga. at 774 .

plaintiff, the complaint is sufficient."[8] Importantly, the issue of immunity is "a question of law and is reviewed de novo."[9]

The Supreme Court of Georgia has explained that the doctrine of official immunity—also known as qualified immunity[10]—"offers public officers and employees limited protection from suit in their personal capacity."[11] And this type of immunity derives from a 1991 amendment to the Georgia Constitution, which provides, in relevant part:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and

---

[8] *Everson*, 344 Ga. App. at 668-69 (2) (punctuation omitted); *accord Austin*, 294 Ga. at 775.

[9] *Atwater v. Tucker*, 343 Ga. App. 301, 306 (1) (807 SE2d 56) (2017).

[10] Although the terms "qualified immunity" and "official immunity" are used interchangeably in Georgia caselaw, we have "adopted the use of the 'qualified immunity' nomenclature to avoid confusion with the defense of sovereign immunity." *Ware v. Jackson*, 357 Ga. App. 470, 773 n.8 (848 SE2d 725) (2020).

[11] *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001); *accord Cosby v. Lewis*, 308 Ga. App. 668, 670 (1) (708 SE2d 585) (2011).

damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.[12]

Furthermore, our Supreme Court has explained that "[t]he doctrine of [qualified] immunity, developed primarily in Georgia through [caselaw], provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority."[13] In this regard, a ministerial act is "commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty."[14] On the other hand, a discretionary act "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned

---

[12] GA. CONST. Art. I, § II, Par. IX (d).

[13] *Austin*, 294 Ga. at 774 (punctuation omitted & emphasis supplied); *accord Wyno v. Lowndes Cty.*, 305 Ga. 523, 526 (2) (824 SE2d 297) (2019).

[14] *Austin*, 294 Ga. at 774 (punctuation omitted); *accord Common Cause/Ga. v. City of Atlanta*, 279 Ga. 480, 482 (2) (614 SE2d 761) (2005).

conclusions, and acting on them in a way not specifically directed."[15] With this guiding analytical framework in mind, we turn to Brooks's specific arguments.

As previously noted, Brooks claims the trial court erred in finding that Palmer was entitled to qualified immunity from her claims because he arrested her for obstruction of an officer without probable cause—*i.e.*, due to her refusal to produce identification when there was nothing to suggest she had engaged in any criminal activity. We disagree.

The decision to effectuate a warrantless arrest "generally is a discretionary act requiring personal judgment and deliberation on the part of the officer."[16] And qualified immunity gives government officials performing discretionary functions "complete protection from individual claims brought pursuant to 42 USC § 1983, if their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known."[17] Importantly, the Fourth Amendment

---

[15] *Austin*, 294 Ga. at 774 (punctuation omitted); *accord Common Cause/Ga.*, 279 Ga. at 482 (2).

[16] *Reed v. DeKalb Cty.*, 264 Ga. App. 83, 86 (589 SE2d 584) (2003); *accord Touchton v. Bramble*, 284 Ga. App. 164, 167 (2) (643 SE2d 541) (2007).

[17] *Atwater*, 343 Ga. App. at 306 (1) (punctuation omitted); *accord McKuhen v. TransformHealthRX, Inc.*, 338 Ga. App. 354, 363 (2) (a) (790 SE2d 122) (2016).

8

of the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution "both protect an individual's right to be free of unreasonable searches and seizures . . . ."[18] And, of course, "[a]n arrest is a seizure of the person, and the reasonableness of an arrest is determined by the presence or absence of probable cause for the arrest."[19]

Moreover, as explained by our Supreme Court, "[w]hen considering whether a police officer had probable cause to arrest, a court must evaluate whether the facts and circumstances known to the police officer would have led a reasonable officer to believe that the suspect probably had committed, was committing, or was about to commit a crime."[20] Nevertheless, the appropriate inquiry for qualified immunity is

[18] *Kendrick v. State*, 335 Ga. App. 766, 768 (782 SE2d 842) (2016); *see* U.S. CONST. AMEND. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."); GA. CONST. Art. 1, § 1, Par. 13 (same).

[19] *Patrick v. Andrews*, 356 Ga. App. 801, 803 (1) (849 SE2d 241) (2020) (punctuation omitted); *accord Skop v. City of Atlanta, GA*, 485 F3d 1130, 1137 (II) (A) (11th Cir. 2007); *see Moran v. State*, 170 Ga. App. 837, 840 (1) (318 SE2d 716) (1984) ("The Fourth Amendment's proscription against unreasonable searches and seizures governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." (punctuation omitted)).

[20] *Caffee v. State*, 303 Ga. 557, 561 (2) (814 SE2d 386) (2018); *accord Mason v. State*, 353 Ga. App. 404, 408 (2) n.2 (837 SE2d 711) (2020).

9

"not whether there was probable cause, but whether there was '*arguable*' probable cause to arrest."[21] And arguable probable cause exists if "a reasonable police officer, knowing what [Palmer] knew, could have believed there was probable cause for the warrantless arrest."[22] Further, even when an arresting officer "operates on a mistaken belief that an arrest is appropriate, [qualified] immunity still applies."[23] Indeed, in the

[21] *Robinson v. MARTA*, 334 Ga. App. 746, 748 (1) (780 SE2d 400) (2015) (punctuation omitted & emphasis supplied); *accord Means v. City of Atlanta Police Dep't*, 262 Ga. App. 700, 705 (2) (586 SE2d 373) (2003); *see Patrick*, 356 Ga. App. at 803 (1) ("An arrest without probable cause is unconstitutional, but officers who make such an arrest are entitled to qualified immunity if there was *arguable* probable cause for the arrest." (punctuation omitted)).

[22] *Patrick*, 356 Ga. App. at 803 (1) (punctuation omitted); *see Robinson*, 334 Ga. App. at 748 (1) (explaining that when determining whether an officer had *arguable* probable cause for an arrest, "we must determine whether reasonable officers in the same circumstances and possessing the same knowledge as [the defendant] could have believed that probable cause existed to arrest" (punctuation omitted)); *Stephens v. Zimmerman*, 333 Ga. App. 586, 594 (2) (774 SE2d 811) (2015) (physical precedent only as to Div. 1) (explaining that, in considering whether arguable probable cause exists, "we must determine whether reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed to arrest" (punctuation omitted)).

[23] *Reed*, 264 Ga. App. at 86; *accord McClendon v. Harper*, 349 Ga. App. 581, 588 (1) (a) (ii) (826 SE2d 412) (2019); *Touchton*, 284 Ga. App. at 167 (2).

absence of malice or intent to injure, "no liability attaches to the officer's exercise of his lawful discretion even when the decision to effectuate the arrest is flawed."[24]

Here, Palmer arrested Brooks for misdemeanor obstruction of an officer for failing to comply with his request for identification. OCGA § 16-10-24 (a), which criminalizes that offense, provides: "Except as otherwise provided in subsection (b) of this Code section, a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor."[25] Significantly, a police officer is *not* discharging his lawful duties when "he arrests an individual without reasonable or probable cause."[26]

---

[24] *Reed*, 264 Ga. App. at 86; *accord Touchton*, 284 Ga. App. at 167-68 (2); *see Selvy v. Morrison*, 292 Ga. App. 702, 704 (665 SE2d 401) (2008) ("[T]he making of a warrantless arrest for conduct occurring in an officer's presence is a discretionary act that will not give rise to personal liability unless the officer acted with actual malice or actual intent to cause injury.").

[25] *See Carter v. State*, 222 Ga. App. 397, 398 (2) (474 SE2d 228) (1996) (explaining that the necessary elements of obstructing a police officer are that the act constituting obstruction was knowing and wilful and that the officer was lawfully discharging his official duties).

[26] *Wagner v. State*, 206 Ga. App. 180, 182 (424 SE2d 861) (1992) (punctuation omitted); *see Glenn v. State*, 310 Ga. 11, 25 (1) (c) (849 SE2d 409) (2020) ("It is well-settled that detaining or arresting a person without authority to do so under the law does not constitute the lawful discharge of the duties of a law enforcement officer, and, therefore, one who resists an unlawful arrest or detention does not commit the offense of obstruction."); *Bacon v. State*, 347 Ga. App. 689, 690 (820

11

In claiming to be entitled to qualified immunity, Palmer contends Brooks's failure to comply with his request for identification obstructed his attempt to "investigate the 911 call[,]" which involved her. But Palmer has not argued that attempting to return merchandise without a receipt is, without more, a crime. To the contrary, Palmer acknowledges that Brooks was not "involved in any criminal or unlawful activity that led to the 911 call." Nevertheless, Palmer maintains that, when he arrived at the scene, he knew only that "an emergency call had been placed implicating potential crime." But he does not identify any particular emergency or specify the potential crime at issue, and—construing the allegations of Brooks's complaint in her favor—Kim never suggested to the 911 operator that there was an emergency or expressed any concern about potential criminal conduct.[27] Moreover, Palmer does not identify any other source of information regarding the situation besides the 911 operator. Simply put, when he arrived at the store, Palmer knew he was there only to help resolve a non-violent, civil dispute between Kim and Brooks

SE2d 503) (2018) ("A police officer is not discharging his lawful duties when he is making an unlawful arrest, and a person who resists an unlawful arrest does not hinder the officer in the lawful discharge of his official duties.").

[27] Although we construe the factual allegations in Brooks's favor, her complaint accurately depicts the audio recording of the 911 call, and Palmer does not dispute her description of the call. *See supra* note 2.

12

over her attempt to return merchandise, and it is unclear why law enforcement needed to be involved in such a dispute at all.

Under these circumstances, Palmer's interaction with Brooks—*prior* to her arrest—was a so called first-tier encounter between a police officer and a citizen in which "police may approach citizens, ask for identification . . . and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave."[28] Furthermore, a mere refusal to identify oneself to a police officer is "not a crime."[29] Indeed, it is well settled that a citizen's ability to walk away from or

---

[28] *Brown v. GeorgiaCarry.org, Inc.*, 331 Ga. App. 890, 896 (770 SE2d 56) (2015) (punctuation omitted & emphasis supplied); *accord State v. Copeland*, 310 Ga. 345, 351 (2) (b) (850 SE2d 736) (2020); *see Ewumi v. State*, 315 Ga. App. 656, 658 (727 SE2d 257) (2012) ("The Supreme Court of the United States has construed the Fourth Amendment to the United States Constitution so as to set forth three tiers of police-citizen encounters. These encounters involve "(1) communication between police and citizens involving no coercion or detention, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause." (punctuation omitted & emphasis supplied)).

[29] *Wagner*, 206 Ga. App. at 182; *see In the Interest of C. B.*, 353 Ga. App. 383, 386 (837 SE2d 544) (2020) ("[T]he mere refusal to identify oneself to an officer in a first-tier encounter is not a crime and cannot establish reasonable suspicion of crime."); *Clark v. State*, 243 Ga. App. 362, 365 (1) (532 SE2d 481) (2000) (noting that, while refusal to identify oneself to a police officer is not a crime, one may commit obstruction when, unlike here, he does so willfully and it hinders an officer's criminal investigation).

otherwise avoid a police officer is "the touchstone of [a first tier] encounter."[30] In fact, "even running from police during a first-tier encounter is wholly permissible."[31] Simply put, Georgia law does not authorize law enforcement officers to "request identification from citizens for no reason and charge them with obstruction if they fail to comply."[32] So, while Palmer had every right to request Brooks's identification in their first-tier encounter, Brooks also had the right to refuse his request or even walk away from that encounter. Thus, because Palmer had no reason to believe Brooks (or anyone else) had been involved in any potential criminal activity, he lacked probable cause, arguable or otherwise, to arrest Brooks for obstruction based solely on her refusal to identify herself.[33]

---

[30] *Brown*, 331 Ga. App. at 896 (punctuation omitted); *accord Black v. State*, 281 Ga. App. 40, 46 (10 (635 SE2d 568) (2006).

[31] *Brown*, 331 Ga. App. at 896 (punctuation omitted); *accord Johnson v. State*, 343 Ga. App. 310, 313 (807 SE2d 101) (2017); *Black*, 281 Ga. App. at 46 (1).

[32] *Brown*, 331 Ga. App. at 896 (punctuation omitted).

[33] *See Galindo-Eriza v. State*, 306 Ga. App. 19, 25 (1) (701 SE2d 516) (2010) (holding that, by exercising their right to leave a first-tier encounter with police, the suspects did not, as a matter of law or fact, hinder or obstruct the officers' lawful discharge of their duties); *Black,* 281 Ga. App. at 44 (1) ("Even running from police during a first-tier encounter is wholly permissible."); *Johnson*, 343 Ga. App. at 313 ("[B]ecause [the plaintiff] had the right to leave the first-tier encounter, his exercise of that right, even if accomplished by running, cannot constitute obstruction."); *see*

Nevertheless, this does not end our inquiry into whether Palmer is entitled to qualified immunity from Brooks's claims. Indeed, Brooks must also show that Palmer acted with actual malice and an intent to injure her when effectuating her unlawful arrest.[34] And in Georgia, malice consists of "personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured."[35] And in the absence of malice or intent to injure, "no liability attaches to the officer's exercise of his lawful discretion even when the decision to effectuate the arrest is flawed."[36]

In this case, Brooks does not *mention*, much less present, a cognizable legal argument that Palmer acted with actual malice or a willful intent to harm her when he arrested her. As a result, she has abandoned any argument in this regard.[37]

---

*supra* notes 26 and 29-32 & accompanying text.

[34] *See supra* notes 12 & 24 and accompanying text.

[35] OCGA § 51-7-2.

[36] *Reed*, 264 Ga. App. at 86; *accord Wilson v. Cromer*, 356 Ga. App. 763, 766 (1) (847 SE2d 213) (2020); *McClendon*, 349 Ga. App. at 588 (1) (a) (ii); *Touchton*, 284 Ga. App. at 167-68 (2); *see Selvy*, 292 Ga. App. at 704 ("[T]he making of a warrantless arrest for conduct occurring in an officer's presence is a discretionary act that will not give rise to personal liability unless the officer acted with actual malice or actual intent to cause injury.").

[37] *See supra* note 1.

15

Additionally, in her brief in opposition to Palmer's motion to dismiss, Brooks also did not acknowledge the malice requirement for defeating Palmer's qualified-immunity claim, much less argue that when he arrested her, Palmer was acting with malice or the intent to harm her. Suffice it to say, Brooks cannot raise an argument for the first time on appeal after failing to do so before the trial court.[38] As a result, Brooks has not provided this Court with any purported error regarding the malice requirement for us to review.

For all these reasons, we affirm the trial court's grant of Palmer's motion to dismiss Brooks's complaint.

*Judgment affirmed. Mercier and Markle, JJ., concur.*

---

[38] *See Pfeiffer v. Ga. Dep't of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("[O]ur appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court." (citation omitted)); *OVIP, Inc. v. Blockbuster Textiles, LLC*, 289 Ga. App. 276, 278 (1) (656 SE2d 907) (2008) ("[I]ssues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken. One may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on below." (punctuation omitted)).